### JOHN HALL *et al. versus* ASA HALL, Executor.

A devisee under a will which may possibly be allowed and take effect in case a will subsequently made by the testator shall be set aside, is not a competent witness to prevent the probate of the subsequent will.

A previous will which has not been offered for probate, is admissible in evidence to show that a person called as a witness to prevent the probate of a subsequent will, is a devisee under the previous will and therefore interested in defeating the subsequent will.

On the trial of the issue whether a will should be approved and allowed, a previous will, which was read to the testatrix at the time when she executed the subsequent will, and explained to her, and its agreements and differences with the subsequent will pointed out to her, but which had never been offered for probate, was *held* to be admissible in evidence as part of the *res gestæ.*

Evidence that a testatrix inherited a large amount of property, and that it had been very much diminished, was *held* to be inadmissible to prove that she was not of a sound mind and capacity to make a will.

An acknowledgment or recognition by a testator, in presence of an attesting witness, either in express terms or impliedly, that the testator's name affixed to a will is his signature, is equivalent to an actual signing in presence of the witness.

THIS was an appeal from a decree of the judge of probate for the county of Bristol, approving and allowing the last will of Huldah Hall; and the following issues were framed, for the purpose of trial by jury :—

1. On the sanity of the testatrix.

2. Whether the will was duly executed, by being signed by the testratrix in presence of three witnesses, and by them attested in her presence.

3. Whether the testatrix was induced to execute the will, by the fraud and imposition of interested persons practising upon her imbecility.

The cause was tried before *Shaw* C. J.

No evidence having been given by the appellants to support this last issue, after the trial was finished and before the cause went to the jury it was withdrawn. On the other two issues a verdict was returned by the jury in support of the will ; and the appellants moved for a new trial, on several grounds.

1. Because the direction of the chief justice in regard to the signature of the will, in the presence of the witnesses, was incorrect in point of law.

The general tenor of the evidence was, that the testatrix was a single woman, about seventy-six years of age, something

peculiar and eccentric in her character and manners ; that at the time when she executed the will she was very sick, laboring under a pulmonary disease, of which she died in about four days after ; that the will was drawn by Mr. Colby, a counsellor at law, at the house of the testatrix, after a full conversation with her ; that she at that time spoke with difficulty, though he understood, without assistance, nearly all sne said, but that Mrs. Bassett, who lived with the testatrix and who is the daughter of Asa Hall, the principal devisee and executor, was present, and at Mr. Colby's request put such questions to the testatrix as he proposed, and in one or two instances communicated her answers. The will purports to be attested by Macey Williams, Philo Williams, and Mary Bump, as witnesses to the execution by the testatrix. Mr. Colby testified as follows : — After the Messrs. Williams came, we went into the room. I read over the will to the testatrix, in a loud voice and with clearness, and explained to her the difference between this and a previous will, which I then had ; I asked her if she understood it. She was then partially raised up in bed ; she said something about not being able to write her name. I told her I would assist her, and did take hold of the pen whilst she wrote her name. I think she then put her hand upon the seal. I then took the will for the witnesses to sign. I was asked if Mary Bump the other witness should not be present. I said, certainly, I thought she was. She then came in. Thinking a republication would be sufficient, I carried the will to the testratix again, and asked her if that was the paper that she had just signed. She took it with a pretty firm hand, and seemed for a moment to entertain some doubt of the purpose, and looked earnestly at the signature, and I told her it was the same, and asked, is this the same instrument you have just signed ; and at that question she took it and looked at the signature. My object was to get an acknowledgment to her signature ; she did not give an answer to this question ; and after she had examined it a moment, I told her it was the same and there was no mistake about it. I asked her if she published that as her last will and testament, and she said she did. Then Mary Bump signed it as a witness. In cross-examination Mr. Colby said, that from the manner and

anguage of the testatrix, he considered that she understood the terms and provisions of the will, as he prepared and read it to her.

The jury were instructed, that to maintain the issue on the part of the executor, and to establish the will, it was necessary to prove that the testatrix signed the will in presence of the witnesses ; or that she acknowledged the signature as hers in their presence, and that they severally signed it as witnesses in her presence ; and that such acknowledgment was a sufficient compliance with the statute. But in the latter case such acknowledgment may be shown, either by proof of an express acknowledgment and declaration that the signature to the will is hers, or by such facts as will satisfy the jury, that she intended to make such declaration or recognition of her signature. If a mere reference is made to a paper, especially if produced by another person, and not held in her own custody, or if it is folded up, and there is no pointing to or referring to the signature, if she publishes, declares and acknowledges such document to be her will, this is not such an acknowledgment of the signature as will supersede the necessity of an actual signature in the presence of the witnesses, and will not warrant the jury in finding that it was duly signed in the presence of the witnesses. In applying the rule to the case, the jury were instructed, that if, when Mary Bump came in, what took place between Mr. Colby and the testatrix amounted to an acknowledgment that the signature there placed was her signature, and she meant to declare, not only that the instrument then produced, if, as she was assured, it was the same she had just signed, was her will, but meant to declare that that paper bore her signature, and that she recognised it as such, this was an equivalent act to an actual signature. But if, declining to answer the first question of Mr. Colby, whether that was the paper she had just signed, and relying only on Mr. Colby's assurance that it was the same, she admitted that the paper which she had before signed was her will, without thereby meaning to declare that this particular paper bore her signature, so as to give authenticity to the paper, then it was not signed agreeably to the requisitions of the statute and within the terms of the issue.

2. Because, supposing the above instruction to be right, the verdict was in this respect, against the weight of the evidence.

3. Because Keith Bassett was offered as a witness by the appellants, and rejected as incompetent on the ground of interest.

The facts proved in support of the objection to this witness were these. The testatrix had made a previous will, which, if the will in controversy were set aside, would be her last will. One of the attesting witnesses proved that it was duly executed by the testatrix, and attested by three attesting witnesses in her presence. By this will she had given her real and personal estate to Ruth Hall, who had since intermarried with Keith Bassett, the witness, and there had been children of this marriage. It was ruled, that the former will, though it had not been offered for probate, was competent evidence for the purpose for which it was offered ; that the witness, as husband of the principal devisee in the former will, had an interest in setting aside the present will, and was therefore incompetent.

4. Because the former will was allowed to go to the jury as evidence.

At the time when this evidence was offered, the issue upon the question of fraud and imposition was open. There had been evidence tending to show, that the testatrix had said that it was her intention to give her property to John Hall's family. This will was offered by the appellees, in connexion with the fact that Ruth Hall, now Ruth Bassett, was the daughter of Asa Hall, and also in connexion with the testimony of Mr. Colby, who stated that he read, explained and compared the two wills, and pointed out to the testatrix wherein they were alike and wherein they differed, with a view to show what will she made at a former period, when not *in extremis,* and as evidence bearing upon the point, that the will in question was made intelligently. It was objected to on the ground that it could not be proved as a will, as it had not been offered for probate at a Probate Court ; but the objection was overruled, and the paper was admitted to be read to the jury.

5. Because evidence from the probate records, showing the amount of property which the testatrix had received as heir at law of her brothers, was rejected.

The appellants proposed to exhibit the records of the Probate Court, to show that the testatrix had inherited a large amount of personal property from her brothers, and then to offer the inventory taken by the limited administrator on the estate of the testatrix, to show a small amount of personal property and consequent diminution, with a view of affecting the question of her sanity and her capacity to manage and take care of property. This evidence was not admitted.

The case was argued by *Coffin*, for the appellants, and *Eddy* and *W. Baylies*, for the appellee.

On the question whether the direction of the chief justice in respect to the signature of the will in the presence of the witnesses, was correct, the appellants' counsel cited *St.* 1783, *c.* 24, § 2 ; Brit. Stat. 29 *Car.* 2, *c.* 3, § 5 ; *Chase v. Lincoln*, 3 Mass. R. 237 ; *Addy v. Grix*, 8 Ves. 504 ; *Stonehouse v. Evelyn*, 3 P. Wms. 253 ; Powell on Dev. 73, 74, 78 ; *Grayson v. Atkinson*, 2 Ves. sen. 454 ; *Right v. Price*, Doug. 241 ; 4 Kent's Comm. (3d edit.) 514 ; *Ellis v. Smith*, 1 Ves. jun. 11 ; and the appellee's counsel cited *Ellis v. Paige*, 1 Pick. 45 ; *Stonehouse v. Evelyn*, 3 P. Wms. 253 ; 3 Stark. Evid. (Metcalf's edit.) 1685 ; *Grayson v. Atkinson*, 2 Ves. sen. 455 ; 4 Kent's Comm. (3d edit.) 514 ; *Ellis v. Smith*, 1 Ves. jun. 11 ; *Peate v. Ougly*, Comyns, 197 ; *Wright v. British Museum*, 6 Bingh. 310 ; *Wright v. Wright*, 7 Bingh. 457 ; 1 Chit. Gen. Practice, 358 ; *Parke v. Mears*, 2 Bos. & Pul. 217.

In regard to the competency of Keith Bassett, the appellants' counsel cited *Carter v. Pearce*, 1 T. R. 164 ; *Smith v. Prager*, 7 T. R. 62 ; *The King v. Boston*, 4 East, 582 ; *Stockham v. Jones*, 10 Johns. R. 21 ; *Stewart v. Kip*, 5 Johns. R. 256 ; *Union Bank v. Knapp*, 3 Pick. 96 ; and the appellee's counsel cited Roscoe on Evid. 82, 90 ; *Griffin v. Brown*, 2 Pick. 304 ; 2 Stark. Evid. (Metcalf's edit.) 744, 747, 749 ; 3 Stark. Evid. 1728 ; *Stebbins v. Sackett*, 5 Connect. R. 259 ; *Buckland v. Tankard*, 5 T. R. 578 ; *Chesley v. St. Clair*, 1 New Hampsh. R. 189 ; *Green v. New River*

Hall
*v.*
Hall.

Oct. 21st.

32 *

Co. 4 T. R. 589 ; *The King* v. *Terrington*, 15 East, 471 ' *Rotheroe* v. *Elton*, Peake's Rep. 84 ; *Doe* v. *Williams*, Cowp. 621 ; *Bird* v. *Thompson*, 1 Esp. Rep. 339.

*Oct. 23 l.*

Putnam J. delivered the opinion of the Court. It was objected that the testimony of Keith Bassett, which was offered by the appellants, was improperly rejected on the ground of his being interested. It was argued that the interest should be certain, and that it was altogether uncertain whether Bassett's wife would ever be benefited by the former will. It might not be proved. But if the last will should be proved, it would operate as a revocation of the former will, and no other will of the testatrix could ever be proved. If the last will should be disallowed, then the witness would have an opportunity to prove the former will, which contains the devise and legacy to his wife. We think this witness was directly interested in the event of the cause, and properly rejected.

The objection of the appellants, that the former will ought not to have been submitted to the jury, we think ought not to prevail. It was read to the testatrix at the time of the execution of the last will, and forms an important part of the *res gestœ*.

And we cannot suppose that the records of the probate office showing that the testatrix had derived a large property from her brothers, and that she died possessed of little property, had any tendency to show that the testatrix was of an unsound mind ; for riches are not always gathered by men of understanding, but time and chance happen to all. If there had been an offer to prove any particular act of folly, as, for example, that the testatrix threw her money into the dock under a belief that it would there vegetate and give her a great increase of wealth, it would have been competent evidence. But the fact of a mere diminution of the property of the testatrix, was not competent evidence to prove a deficiency of a sound and disposing mind.

The important question is, whether the instruction of the chief justice to the jury was correct, and if so, whether the jury were warranted from the evidence to find a verdict establishing the will.

The statute of 1783, *c*. 24, § 2, is copied from *St*. 29 *Car*. 2, *c*. 3, § 5, with one immaterial variation. The statute of Charles requires the attestation of three or *four* credible witnesses, and the statute of 1783 requires three or *more*. The statute provides, that " all devises and bequests of any lands or tenements shall be in writing, and signed by the party so devising the same, or by some person in his presence, and by his express direction, and shall be attested and subscribed in the presence of the said devisor, by three or more credible witnesses, or else shall be utterly void and of no effect." It must be presumed that our statute was adopted with a full knowledge and approbation of the construction which had been given to the statute of Charles by the English courts.

The witnesses must attest to the signing of the will. They must have knowledge of that fact in some manner. If they saw the testator actually sign the will, there could be no doubt ; and there would be as little if the testator acknowledged his signature to the witnesses. And it was held a long time before the American revolution, that it was sufficient that the testator should own his signature to the witnesses. The signature may have been put by some person by the express direction of the testator. If the testator should exhibit the will with such adopted signature and declare to the witnesses that it was his will, they might legally subscribe and attest it as such.

It has been decided, *Jones* v. *Lake*, 2 Atk. 177, note, that if a testator executes the will in the presence of two witnesses who attest it, and afterwards goes over his name with a pen in the presence of a third, this is a good execution. Now the going over the signature with a dry pen, is but a significant act denoting a recognition and acknowledgment of the signature of the testator. If he did or said any thing which clearly manifested his adoption of the signature as his own, it would seem the witnesses might well attest to the will.

This is substantially what was contained in the charge of the chief justice. The witnesses need not actually see the testator sign, but if the signature be acknowledged by the testator to be his, it is sufficient.

But it was argued, that when the testatrix was asked by the

scrivener if that was her signature, she made no answer ; so that she never has acknowledged or owned her signature ; that there was proof of publication, but not of signing. Taking the whole of that transaction together, it seems to us, that when the will was again shown to the testatrix, and she looked earnestly upon it, she was surprised to be called upon again to do what she supposed she had just before already done. But the scrivener proceeded to explain the matter to her, and she seemed to understand, and on being asked immediately afterwards if " she published that as her last will and testament," she said that she did. Now if the testatrix recognised the signature and acknowledged, in the presence of the last witness, Mary Bump, that it was her will, it necessarily amounted to an acknowledgment of the signature. It could not be a will without. The name of the testatrix was affixed to it, she examined it attentively, and then published it as her last will and testament.

There is no doubt of the identity of the paper, and we all think that there is no doubt but that the jury ought, from the evidence, to have found that the will was properly executed.

The appellants are not to take any thing by the motion for a new trial.

*Decree of the judge of probate affirmed, and proceedings remitted accordingly.*